FILED

2014 Sep-26  PM 03:54
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### MIDDLE DIVISION

| | | |
|---|---|---|
| **CHRISTOPHER HEARN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | **4:12-cv-3892-AKK** |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Plaintiff Christopher Hearn ("Hearn") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence. Therefore, for the reasons elaborated herein, the court will affirm the decision denying benefits and deny Hearn's motion to remand.

### I.  Procedural History

Hearn, who has no past relevant work, filed an application for Title XVI Supplemental Security Income on December 1, 2008, alleging an amended disability onset date of June 24, 2010, (R. 29), due to bipolar disorder and depression, (R. 251). After the SSA denied Hearn's claim, he requested a hearing before an ALJ. (R. 139-

40).  The ALJ subsequently denied Hearn's claim, (R. 26-45), which became the final

decision of the Commissioner when the Appeals Council refused to grant review, (R.

1-6).  Hearn then filed this action for judicial review pursuant to § 205(g) of the Act,

42 U.S.C. § 405(g).  Doc. 1.

## II.  Standard of Review

The only issues before this court are whether the record contains substantial

evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*,

672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal

standards.  *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v.*

*Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. § 405(g) mandates that

the Commissioner's "factual findings are conclusive if supported by 'substantial

evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district

court may not reconsider the facts, reevaluate the evidence, or substitute its judgment

for that of the Commissioner; instead, it must review the final decision as a whole and

determine if the decision is "reasonable and supported by substantial evidence."  *See*

*id*.  (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of

evidence; "[i]t is such relevant evidence as a reasonable person would accept as

adequate to support a conclusion."  *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*,

703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the

court must affirm the Commissioner's factual findings even if the preponderance of

2

the evidence is against the Commissioner's findings.  *See Martin*, 894 F.2d at 1529.

While the court acknowledges that judicial review of the ALJ's findings is limited in

scope, it notes that the review "does not yield automatic affirmance."  *Lamb*, 847 F.2d

at 701.

### III.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage

in any substantial gainful activity by reason of any medically determinable physical or

mental impairments which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than twelve months."  42

U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i).  A physical or mental impairment is "an

impairment that results from anatomical, physiological, or psychological

abnormalities which are demonstrated by medically acceptable clinical and laboratory

diagnostic techniques."  42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis.  20

C.F.R. §§  404.1520(a)-(g), 416.920(a)-(g).  Specifically, the Commissioner must

determine in sequence:

(1)     whether the claimant is currently unemployed;

(2)     whether the claimant has a severe impairment;

(3)     whether the impairment meets or equals one listed by the Secretary;

(4)     whether the claimant is unable to perform his or her past work; and

(5)     whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id.* at 1030 (citing 20 C.F.R. § 416.920(a)-(f)).  "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

## IV.  The ALJ's Decision

In performing the five step analysis, the ALJ found that Hearn had not engaged in substantial gainful activity since June 24, 2010, and, therefore, met Step One.  (R. 44).  Next, the ALJ found that Hearn satisfied Step Two because he suffered from the severe impairments of "mood disorder, [not otherwise specified], borderline IQ and personality disorder." *Id*.  The ALJ then proceeded to the next step and found that Hearn failed to satisfy Step Three because he "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments." *Id.*  Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four where he determined that Hearn has the residual functional capacity (RFC) to perform "medium work as defined in 20 CFR 416.967(c) which allows simple,

repetitive, non-complex tasks. [Hearn] should primarily work with or around things as opposed to the general public with no driving or exposure to unprotected heights." *Id.* Next, the ALJ found "[Hearn] has no past relevant work." *Id.* Lastly, in Step Five, the ALJ considered Hearn's age, education, work experience,[1] and RFC, and determined "there are jobs that exist in significant numbers in the national economy [Hearn] can perform." *Id.* Therefore, the ALJ found that Hearn "has not been under a 'disability,' as defined in the Social Security Act, since June 24, 2010." (R. 45).

## V.  Analysis

The court now turns to Hearn's motion for remand under sentences four and six of 42 U.S.C. § 405(g), doc. 12, and his contentions that (1) his impairments meet or equal a listed impairment; (2) the ALJ failed to afford proper weight to the opinions of Dr. David Wilson, Ph.D.; (3) the ALJ failed to consider all of his severe impairments; (4) the ALJ failed to consider Hearn's impairments in combination; (5) the ALJ's hypothetical question to the vocational expert (VE) did not include all of Hearn's limitations when the evidence submitted to the Appeals Council is considered; (6) the ALJ's decision is not supported by substantial evidence when the Appeals Council evidence is considered; and (7) the Appeals Council failed to show in its written denial of review that it had adequately evaluated the new evidence. *See* doc. 9 at 10-20. The court will addresses each contention in turn.

---

[1]  As of the date of the ALJ's decision, Hearn was 38 years old, and had a marginal education. (R. 44).

A.      Hearn's Motion to Remand

Hearn contends that the record does not include evidence he submitted to the

Appeals Council,[2] and moves the court to remand the case under sentences four and

six of 42 U.S.C. § 405(g)( hereinafter "sentence four" and "sentence six").[3]  Doc. 12

at 1.  In connection with Hearn's request for review, the Appeals Council explained

why it did not consider this evidence:

> The Administrative Law Judge decided your case through January 24,
> 2011.  This new information is about a later time.  Therefore, it does not
> affect the decision about whether you were disabled beginning on or
> before January 24, 2011.
>
> If you want us to consider whether you were disabled after January
> 24, 2011, you need to apply again.

(R. 2).  Based on this determination, the Appeals Council did not include the

submissions in the record, and presumably returned the evidence to Hearn.[4]

_____

[2]  Hearn attached the medical records to his brief.  Doc. 9-1.

[3]  Sentence four provides that "[t]he court shall have power to enter, upon the
pleadings and transcript of the record, a judgment affirming, modifying, or reversing the
decision of the Commissioner of the Social Security, with or without remanding the
cause for a rehearing."  Sentence six states, in relevant part, that "[t]he court . . . may at
any time order additional evidence to be taken before the Commissioner, but only upon
showing that there is new evidence which is material and that there is good cause for the
failure to incorporate such evidence into the record in a prior proceeding."  42 U.S.C. §
405(g).

[4]  _See_ 20 C.F.R. § 404.976(b) ("If you submit evidence which does not relate to
the period on or before the date of the administrative law judge hearing decision, the
Appeals Council will return the additional evidence to you with an explanation as to why
it did not accept the additional evidence . . . .").

Hearn's contention that this court should remand the case under sentence four is unavailing because any judgment of remand under sentence four must be "upon the pleadings and transcript of the record."[5]  As the Eleventh Circuit has recognized, "[a] reviewing court is limited [to the record certified by the Commissioner] in examining the evidence." *Cherry v. Heckler*, 760 F.2d 1186, 1193 (11th Cir. 1985). Consequently, when, as here, the Appeals Council does not consider the evidence, this court  treats the evidence "as if it had been first presented to the district court and . . . evaluate[s] the case under sentence six." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1268 (11th Cir. 2007) (quoting *Milano v. Bowen*, 809 F.2d 763, 766 11th Cir. 1987) (internal quotation marks omitted).

To obtain a remand under sentence six, the settled law in this circuit requires Hearn to establish that (1) there is new, noncumulative evidence; (2) the evidence is material; and (3) there is good cause for failure to submit the evidence at the administrative level. *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986).  The new evidence is material if it is "relevant and probative so that there is a reasonable possibility that it would change the administrative result." *Id.*  Remand is not warranted here because Hearn has not established that the evidence is relevant to his condition at the time of the ALJ's decision.  Although Hearn correctly points out that

---

[5]  "As part of the Commissioner's answer the Commissioner of Social Security shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based." 42 U.S.C. § 405(g).  The evidence at issue here is not part of the certified transcript filed by the Commissioner.

treatment records after the date of the decision *may* be relevant, doc. 12 at 4, he does not specify how or why the treatment records he submitted *are* relevant, except to assert that "all submissions describe physical and psychological symptoms manifested by [Hearn] that, due to their nature and severity, *could* bear on her [sic] condition during the relevant period," *id.* at 5 (emphasis added).  Consequently, Hearn has failed to failed to meet his burden of properly presenting the issue for decision.  *See Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278 (11th Cir.2009) ("[S]imply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue and precludes our considering the issue on appeal.").

Alternatively, the court finds that the evidence is not material because it fails to rise to the level necessary to show a reasonable expectation of changing the administrative result.  A review of the evidence submitted by Hearn shows that it is not chronologically relevant to Hearn's condition on or before January 24, 2011, the date of the ALJ's decision.  For example, Hearn received treatment on March 22, 2011, for a cut on his left foot caused by a sharp piece of metal that occurred that day, doc. 9-1 at 84, and, as such, is an injury that is unrelated to Hearn's condition at the time of the ALJ's decision.  The evidence rejected by the Appeals Council also contains treatment records showing Hearn's admission for three days to the Marshal Medical Center South on April 25, 2011, for evaluation of chest pain radiating into the left shoulder.  *Id.* at 13.  Significantly, at intake, Hearn reported "no significant past medical history," *id.* at 15, which belies his contention that his cardiovascular

problems manifested prior to the ALJ's decision.[6]  The next treatment note submitted by Hearn shows that he was treated at the ER on May 23, 2011, for a recent cut to his hand caused by tin roofing, *id.* at 51, which obviously is not chronologically relevant. Similarly, Hearn's treatment on August 14, 2011, for shortness of breath of one week duration is chronologically irrelevant, and in fact, documents that Hearn "demonstrate[d] normal behavior," and was able to "perform all activities of daily living without assistance."  *Id.* at 66, 71.

The remaining treatment notes show Hearn sought treatment for chest pain of two days duration on January 14, 2012, *id.* at 53-64, and was evaluated for suspected seizures on January 11, 2012, *id.* at 88-103.  These two treatment notes from approximately one year after the ALJ's decision are hardly chronologically relevant. Finally, Hearn also submitted an updated psychological evaluation and mental health source statement obtained in June 2012 (at the behest of his attorney) from Dr. David Wilson, Ph.D.[7]  *Id.* at 94-103.  Unfortunately for Hearn, Dr. Wilson's evaluation of

---

[6]  Interestingly, when Hearn returned to Dr. Raymond Fernandez for a follow-up of his cardiac condition on May 12, 2011, he "denie[d] depression, anxiety, memory loss, mental disturbance, suicidal ideation, hallucinations, [and] paranoia," doc. 9 at 10, which supports the ALJ's finding that Hearn's mental conditions were not disabling.  Similarly, when Hearn saw Dr. Fernandez on November 14, 2011, Hearn requested a "cardiac clearance to start a new job since he takes blood pressure medication."  Doc. 9-1 at 7. On examination, Dr. Fernandez found "no depression, anxiety, or agitation" and stated that Hearn was "[c]leared to go back to work."  Doc. 9-1 at 6-7.

[7]  Dr. Wilson also conducted a psychological evaluation of Hearn at the request of his attorney on July 28, 2010.  (R. 431-39).  The ALJ properly gave Dr. Wilson's July 2010 opinions little weight.  *See infra* Part V.C.

Hearn's mental state 18 months after the ALJ's decision, in which he opined Hearn

"has more problems now than he did when he was seen [in July 2010]," is simply not

relevant to his mental condition at the time of the ALJ's decision.

Based on its review of the evidence, the court finds the medical records

forming the basis of Hearn's motion are not material because they are not

chronologically relevant, and are unlikely to change the administrative finding.

Accordingly, even if Hearn had properly presented the issue for decision, his motion

for remand is without merit and will be denied.

B.    The Listings

Hearn next contends that he meets listings 12.04, 12.06,[8] and 12.08.  Doc. 9 at

10-14; *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1 (hereinafter "listing(s)").  Hearn bears

the burden of showing that his impairments meet or equal a listed impairment.  *Barron*

*v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991).  The regulations also provide that

Hearn "must furnish medical and other evidence that [the Commissioner] can use to

reach conclusions about [his] medical impairment(s)."  20 C.F.R. § 404.912(a).

Moreover, Hearn's impairments must "meet *all* of the specified medical criteria.  An

---

[8] The ALJ did not specifically address listing 12.06, which covers anxiety related disorders, likely because Hearn failed to present evidence showing that he was diagnosed with an anxiety disorder.  Nonetheless, the ALJ's findings with respect to listings 12.04 and 12.08 are sufficient to show that Hearn does not meet listing 12.06 because the B criteria of listing 12.06 is identical to those listings, and there is no evidence showing Hearn meets the C criteria of listing 12.06, which requires a "complete inability to function independently outside the area of one's home."  Listing 12.06C.

impairment that manifests only some of those criteria, no matter how severely, does

not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original).

To determine whether Hearn met listing 12.04 or 12.08, the ALJ initially

considered whether Hearn satisfied the paragraph B criteria of the listings.[9]  As to the

first criteria–i.e. marked restriction of activities of daily living, *see* listings 12.04B(1),

12.06B(1), 12.08B(1), the ALJ found Hearn had only mild restrictions in activities of

daily living because Hearn's statements "show he is able to take care of his personal

hygiene without assistance, watch television daily, and travel by walking or riding in a

car," and that " he was able to . . . go out without being accompanied."  (R. 38, 262,

264).  The ALJ also noted that one of Hearn's friends "indicated [Hearn] was able to

help with routine housework."  (R. 38, 271).  Next, with respect to the second

criteria–i.e. marked difficulties in social functioning, *see* listings 12.04B(2),

12.06B(2), 12.08B(2), the ALJ found Hearn had moderate difficulties, and noted that

Hearn's father testified that "Hearn and his girlfriend recently moved in together."  (R.

38-39, 114).  The ALJ further observed that Hearn reported "he lived with his father

and helped to take care of him," and "rode in the golf cart with his father when his

---

[9]  To satisfy the paragraph B criteria for all three listings, Hearn must establish he
has at least two of four limitations: (1) marked restriction of activities of daily living; (2)
marked difficulties in maintaining social functioning; (3) marked difficulties in
maintaining concentration, persistence, or pace; or (4) repeated episodes of
decompensation, each of extended duration.  *See* listings 12.04B, 12.06B, 12.08B.  For
the purposes of the mental disorder listings, "marked" means "more than moderate but
less than extreme."  Listing 12.00(C).

father played golf." (R. 39, 435). The ALJ also noted that Hearn's friend indicated "that while [Hearn] had problems getting along with his family members, he socialized with others fairly well." (R. 39, 272). The ALJ then proceeded to the third criteria–i.e. marked difficulties in maintaining concentration, persistence, or pace, *see* listings 12.04B(3), 12.06B(3), 12.08B(3), and found that Hearn's "testimony and prior admitted activities of daily living fail to establish greater than a moderate degree of restriction in this area." (R. 39). Finally, the ALJ addressed the last criteria–i.e. repeated episodes of decompensation, *see* listings 12.04B(4), 12.06B(4), 12.08B(4), and found Hearn "has experienced no episodes of decompensation which have been of extended duration," because "the evidentiary record does not include any objective findings [Hearn] has experienced episodic decompensation of extended duration." *Id.* Based on these findings, the ALJ determined that Hearn did not meet the paragraph B criteria of listings 12.04 or 12.08. (R. 39).

The ALJ then addressed the paragraph C criteria of listing 12.04[10] and found that Hearn did not meet it because

> [t]he evidentiary record does not reflect [Hearn's] mental impairments have caused the level of debilitation as alleged and does not indicate

---

[10] Listing 12.08 contains no C criteria. To satisfy the paragraph C criteria of listing 12.04, Hearn must show that he has one of the following: (1) repeated episodes of decompensation, each of extended duration; (2) a residual disease that has resulted in such marginal adjustment that even minimal increase in mental demands or change in the environment would be predicted to cause the him to decompensate; or (3) a current history of one or more years' inability to function outside a highly supportive living arrangement with a need for such an arrangement to continue. Listing 12.04C.

> [Hearn] has mental impairments which have caused repeated episodes of decompensation, or caused a disease process resulting in such a marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause decompensation. He does not show that he has an inability to function outside of a highly supportive living arrangement, or that he would have a continued need for such arrangement.

(R. 39).[11]

To support his contention that the ALJ erred by finding he did not meet a listing, Hearn quotes portions of his testimony and summarizes portions of the medical evidence. Doc. 9 at 10-14. However, Hearn never explained how his testimony shows that he meets a listing, nor does he contend that the ALJ erred in assessing his credibility. Moreover, the evidence cited by Hearn is insufficient to satisfy his burden of establishing that he meets one of the relevant listings,[12] and fails

---

[11] Although the ALJ did not address the C criteria of listing 12.06, his finding as to listings 12.04 and 12.08 show that he found Hearn's mental impairment did not result in the "complete inability to function independently outside the area of one's home," which is required under Listing 12.06C. Therefore, there is no need to remand this matter for the ALJ to make a specific finding as to the C criteria for listing 12.06. *See supra* n. 8

[12] In fact, much of the evidence cited by Hearn supports the ALJ's findings. For example, Hearn's summary of the SSA consultative psychological examiner's report states that Hearn "[i]s able to relate interpersonally and withstand the pressures of everyday work," "is mildly compromised," and that "[Hearn's] deficits would not interfere with his ability to remember, understand and carry out work related instructions." Doc. 9 at 10. At best, Hearn's summary of the evidence shows that there is evidence that supports his claim, as well as evidence that supports the ALJ's findings. Hearn has not, however, demonstrated that the ALJ's factual findings are not supported by substantial evidence.

to show that the ALJ's findings are not supported by substantial evidence.[13]  To the

contrary, based on the record before this court, the ALJ reasonably found based on

substantial evidence that Hearn does not meet a listing.  Accordingly, because this

court does not reweigh the evidence, there is no reversible error in the ALJ's finding.

     C.    Dr. Wilson's Opinions

     Hearn's next contention is that the ALJ failed to afford proper weight to the

opinions of Dr. David Wilson, Ph.D., who examined Hearn on July 28, 2010, at the

request of his attorney.  Doc. 9 at 14.  As a nontreating source, Dr. Wilson's opinions

are not entitled to controlling weight under 20 C.F.R. § 404.1527(c)(2).

Consequently, the ALJ had to consider several factors to determine the weight, if any,

to give Dr. Wilson's opinions.  These factors include whether Dr. Wilson (1) had

examined Hearn; (2) had a treating relationship with Hearn; (3) presented medical

evidence and explanation supporting the opinion; (4) provided an opinion that is

consistent with the record as a whole; and (5) is a specialist.  *See* 20 C.F.R. §§

404.1527(c), 416.927(c).  Moreover, the ALJ "may reject the opinion of any physician

when the evidence supports a contrary conclusion."  *Bloodworth v. Heckler*, 703 F.2d

1233, 1240 (11th Cir. 1983).  Indeed, even a treating physician's opinions, which are

---

[13]  Hearn's reliance on the report of Dr. David Wilson, Ph.D., doc. 9 at 11, is unavailing because the ALJ properly determined that Dr. Wilson's opinions were entitled to little weight.  *See infra* Part V.C.

entitled to more deference than those of Dr. Wilson, may be rejected if the ALJ has "good cause." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

To support his contention that the ALJ erred in rejecting Dr. Wilsons opinions, Hearn directs the court to *Wilder v. Chater*, 64 F.3d 335 (7th Cir. 1995). In *Wilder*, the court "consider[ed] with a degree of suspicion the administrative law judge's decision to go against *the only medical evidence in the case*, that of a psychiatrist not retained by the applicant but appointed by the administrative law judge himself to advise on [the claimant's] condition." *Id.* at 337 (emphasis added). This fact distinguishes *Wilder* from the present case because, here, Dr. Wilson was retained by Hearn's attorney, and there was extensive medical evidence from both treating and consultative examiners. In fact, the ALJ discussed in detail the inconsistencies between Dr. Wilson's findings and those of Dr. June Nichols, Ph.D., the SSA consultative mental examiner. (R. 41-42). For example, the ALJ noted that during Dr. Nichols' evaluation, Hearn "could not recall the grades he made in school or whether he exhibited any disciplinary problems," and "did not recall his childhood or his work history," yet when he was evaluated by Dr. Wilson, Hearn "was able to recall more detailed information as to the nature of his condition," "was able to recall incidents from his childhood in regard to mental health treatment as well as treatment for seizures," and could "recall the medication he was treated with as a child and while he was incarcerated." (R. 41). The ALJ also observed that while Hearn reported to Dr. Nichols that "he lived with friends and enjoyed talking with them," he

told Dr. Wilson "that he did not have friends or participate in social activities." *Id.* Moreover, the ALJ found it significant that Dr. Wilson assessed Hearn with a GAF score of 50, indicating severe mental symptoms,[14] yet Dr. Nichols assessed a GAF score of 68,[15] indicating only mild symptoms. *Id.* Therefore, unlike in *Wilder*, the ALJ here properly relied on other medical evidence to reject Dr. Wilson's opinions.

Based on the record before this court, it is evident that the ALJ considered the factors set forth in the regulations and, consistent with the law of this circuit, articulated good cause for giving Dr. Wilson's opinions little weight: i.e., that Dr. Wilson's opinions were inconsistent with the other medical evidence. Therefore, the ALJ did not err by giving Dr. Wilson's opinions little weight. *See Bloodworth*, 703 F.2d at 1240 (physician's opinion may be rejected "when the evidence supports a contrary conclusion."). Accordingly, because this court does not reevaluate the evidence, or substitute its judgment for that of the Commissioner, *see Martin*, 894 F.2d at 1529, the ALJ committed no reversible error.

─────────────────────

   [14]   The Global Assessment of Functioning (GAF) Scale is used to report an individual's overall level of functioning. *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed., Text Revision) ("DSM-IV-TR"). A GAF of 41-50 indicates: "**Serious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) **or any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job)." DSM-IV-TR at 34 (emphasis in original).

   [15]   A GAF of 61-70 indicates: "**Some mild symptoms** (e.g., depressed mood and mild insomnia), **OR some difficulty in social, occupational, or school functioning** (e.g., occasional truancy, or theft within the household), **but generally functioning pretty well, with some meaningful interpersonal relationships**." *DSM-IV-TR* at 34 (emphasis in original).

D.     The ALJ's Consideration of Hearn's Severe Impairments

Next, Hearn contends that the ALJ erred by not considering all of his severe impairments.  Doc. 11 at 10-11.  Hearn's contention is unavailing because in this circuit, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe," so long as Hearn's impairments were considered in combination at the later steps.  *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010).  Consistent with the law, the ALJ found Hearn had multiple severe impairments and proceeded to Step Three, where he found there were "insufficient findings . . . to confirm the presence of an impairment or combination of impairments that meet or equal in severity the criteria of a listed impairment."  (R. 44).  This finding alone is sufficient to establish that the ALJ considered Hearn's impairments in combination.  *See Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1533 (11th Cir.1991) (ALJ's finding that claimant did not have "an impairment *or combination of impairments* listed in, or medically equal to one [in the Listings]" is sufficient to show the impairments were considered in combination) (emphasis in original).  Moreover, the ALJ recognized that in assessing Hearn's RFC, he had to "consider all of [Hearn's] impairments, including impairments that are not severe." (R. 30).  Finally, the regulations state that the only consequence of the analysis at Step Two is that if the ALJ finds no severe impairment or impairments, he should reach a conclusion of no disability.  *See* C.F.R. § 404.920(c)a)(ii).  Accordingly, even assuming that Hearn is correct, the ALJ's failure to identify all of his severe

17

impairments is harmless because it did not, in any way, change the ALJ's decision.
*See  Caldwell v. Barnhart*, 261 F. App'x 188, 190 (11th Cir. 2008) (citing *Diorio v.
Heckler*, 721 F.2d 726, 728 (11th Cir.1983)).

      E.      <u>The ALJ's Consideration of Hearn's Impairments in Combination</u>

Hearn next contends that the ALJ did not properly consider Hearn's
impairments in combination.  Doc. 9 at 15-16.  As Hearn correctly notes, when a
claimant has several impairments, the Commissioner "has a duty to consider the
impairments in combination and to determine whether the combined impairments
render the claimant disabled."  *Jones v. Department of Health and Human Services*,
941 F.2d 1529, 1533 (11th Cir. 1991).  Unfortunately, Hearn does not develop his
argument except to assert that

> [t]he record clearly indicates that [Hearn] is suffering from a
> combination of impairments: bipolar disorder and depression s/p
> multiple suicidal attempts, schizophrenia and psychiatric disturbance
> with hallucinations, antisocial personality disorder, mood disorder,
> borderline intelligence, chronic coronary atherosclerosis of coronary
> artery and hypertensive heart disease, history of seizure disorder,
> asthma, and insomnia.[16]

---

[16]  Hearn testified that his only physical problems were his history of seizures and
that his shoulder was "messed up."  R. 104.  In fact, in response to the ALJ's Pre-Hearing
Order, Hearn's counsel indicated Hearn alleged no exertional limitations.  (R. 425).
Moreover, there are no treatment records showing a coronary impairment prior to the
ALJ's decision, and the Appeals Council properly refused to consider evidence related to
that impairment because it did not relate to the time of ALJ's decision.  *See supra* Part
V.A.

Doc. 9 at 16.  Significantly, Hearn does not explain how this combination of

conditions limits his ability to work, and "the mere existence of these impairments

does not reveal the extent to which they limit [Hearn's] ability to work or undermine

the ALJ's determination in that regard."  *Moore v. Barnhart*, 405 F.3d 1208, 1213

(11th Cir. 2005).  In other words, Hearn has "simply stat[ed] that an issue exists,

without further argument or discussion," which "constitutes abandonment of that

issue and precludes . . . considering the issue on appeal."  *Singh*, 561 F.3d at 1278.  In

any event, there is no error here because the ALJ recognized his obligation to

"consider all of [Hearn's] impairments, including impairments that are 'not severe'" in

assessing his RFC, (R. 30), properly considered Hearn's impairments in combination,

and specifically found that "[Hearn] does not have an impairment, or combination of

impairments, which meets or equals the criteria of [a listed impairment]."  (R. 38).  As

stated previously, this finding alone is sufficient to establish that the ALJ considered

Hearn's impairments in combination.  *See Jones*, 941 F.2d at 1533.  Therefore,

Hearn's contention is unavailing.

     F.    <u>The ALJ's RFC Finding and Hypothetical Question to the VE</u>

     Hearn challenges next the ALJ's finding that Hearn can do medium work.

According to Hearn, "[t]here is no evidence that [Hearn] can perform medium work,"

and the ALJ erred by posing an "hypothetical question [to the VE that] did not

include [Hearn's] mental conditions."  Doc. 9 at 17.  Despite making these

contentions, Hearn failed to explain how his mental condition limits his ability to

work more than the ALJ provided for in his RFC assessment, or why his physical

impairments preclude medium work.  This failure dooms Hearn's case, especially

since, in response to the ALJ's Pre-Hearing Order, Hearn's counsel indicated that

Hearn alleged no exertional limitations.  (R. 425); *see Street v. Barnhart*, 133 F.

App'x 621, 627 (11th Cir. 2005) (ALJ is not required to investigate allegations "not

presented at the time of the application for benefits and not offered at the hearing as a

basis for disability") (quoting *Pena v. Chater*, 76 F.3d 906, 909 (8th Cir. 1996)).

Alternatively, Hearn's contentions miss the mark because the ALJ included mental

restrictions in his RFC assessment by providing that Hearn "should primarily work

with or around things as opposed to the general public," and by limiting him to

"simple, repetitive, non-complex tasks."  (R. 44).  Simply put, Hearn has not met his

burden of showing that his mental impairments cause restrictions greater than those

found by the ALJ.  *See* 20 C.F.R. § 416.912(c) ("You must provide medical evidence

showing that you have an impairment(s) and how severe it is during the time you say

that you are disabled."); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003)

("[T]he claimant bears the burden of proving that he is disabled, and, consequently, he

is responsible for producing evidence in support of his claim.") (citing 20 C.F.R. §

416.912(a), (c)).  Accordingly, Hearn has not shown that the hypothetical question to

the VE failed to properly account for Hearn's restrictions, and, his contention is

without merit.

G.     VE Testimony and the Evidence Considered by the Appeals
       Council

As his next basis for alleged error, Hearn maintains that the ALJ's decision is not supported by substantial evidence when the evidence he submitted to the Appeals Council is considered.[17]  If a claimant "properly presents new evidence to the [Appeals Council] and it denies review, [a reviewing court] essentially consider[s] the claimant's evidence anew to determine whether 'that new evidence renders the denial of benefits erroneous.'"  *Levie*, 514 F. App'x. at 832 (quoting *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1262 (11th Cir.2007).  Therefore, this court must consider the record as a whole, including the evidence made part of the record by the Appeals Council, to determine whether the ALJ's findings are supported by substantial evidence.  *Ingram*, 496 F.3d at 1266.

According to Hearn, the ALJ "relied on VE testimony, which was not based on a correct or full statement of [Hearn's] limitations and impairments."  Doc. 9 at 17.  Presumably Hearn is maintaining that the records he submitted to the Appeals Council outline his full limitations.  In any event, Hearn appears to base this contention, in part, on the ALJ's failure to credit his testimony: "[Hearn] testified regarding his paranoia and the VE concluded that if [Hearn] could not be around

_____

[17]  As discussed above, *supra* Part V.A., the court may only consider the evidence made part of the record by the Appeals Council to determine whether a remand under sentence four is warranted.  Therefore, the court will only consider the additional evidence made part of the record by the Appeals Council in connection with Hearn's contention.

people, he would be unable to work." Doc. 9 at18.  Unfortunately, Hearn does not

explain why the ALJ's credibility finding is not supported by substantial evidence, or

cite to any specific evidence submitted to the Appeals Council to support his

contention of error.  Hearn cannot make such a showing because a review of the

ALJ's decision shows that the ALJ properly considered and rejected  Hearn's

testimony about disabling mental symptoms:

> [Hearn's] statements concerning his impairments and their impact on
> his ability to work are not fully credible in light of the evidentiary
> record.  Although [Hearn] testified he experienced disabling limitations
> due to mental impairments, the evidentiary record included limited
> mental health treatment records to document his allegations.  The
> medical evidence reflects [Hearn] had a sporadic history of mental
> health treatment for mood disorder NOS and antisocial personality
> disorder consisting of two treatment visits in 2007 and one visit in
> 2009.  Medical records reflect treatment for a possible drug overdose in
> 2009.  And, the evidentiary record also included a few references to the
> [Hearn's] sporadic use of medication.  Of note, is that contrary to
> [Hearn's] testimonial contention he experiences significant limitations
> from his mental impairments, no such limitations were indicated in the
> treatment notes of his limited records.  At any rate, this treatment period
> is prior to [Hearn's] amended onset date of disability of June 24, 2010.
> (Exhibits 1F, 5F, 9F,11F).

(R. 40).  This discussion establishes that, in accordance with the law of this circuit,

the ALJ articulated specific reasons for discounting Hearn's testimony of disabling

symptoms, and properly considered the conservative and sporadic nature of Hearn's

treatment in assessing his credibility.  *See Dyer v. Barnhart*, 395 F.3d 1206, 1211

(11th. Cir. 2005) (ALJ properly considered gaps in treatment); *Falcon v. Heckler*, 732

F.2d 827, 832 (11th Cir. 1984) (ALJ properly considered conservative nature of

treatment).  Significantly, even though the ALJ did not credit Hearn's testimony of disabling symptoms, he recognized that Hearn had some limitations caused by his mental impairments by providing that Hearn "should primarily work with or around things as opposed to the general public" and by limiting him to "simple, repetitive, non-complex tasks."  (R. 44).  Therefore, the court finds that substantial evidence supports the ALJ's determination that these restrictions account for Hearn's symptoms.  Accordingly, because this court does not reweigh the evidence, there is no reversible error in the ALJ's credibility finding.

Moreover, contrary to Hearn's contention, the evidence considered by the Appeals Council does not render the ALJ's credibility finding erroneous.  The evidence included additional mental healthcare treatment records prior to Hearn's alleged onset of disability, which showed that Hearn was treated while in jail for a mood disorder and anti-social disorder on July 13, 2007, (R.482-86), and August 1, 2007, (R. 489-90).   However, these records are cumulative of treatment records from the same period that the ALJ considered, and show that Hearn was taken to the emergency room with depression and self inflicted wounds to his right wrist on July 5, 2007, (R. 394-399), and August 3, 2007, (R. 380-85).  Because the "new" evidence does not show Hearn's condition was worse than reflected in the evidence available to the ALJ, it does not render the ALJ's decision erroneous.  Likewise, the treatment records from May and June 2009, (R. 488, 480), which also show Hearn received treatment for a mood disorder, are cumulative of evidence from the same time period

that the ALJ reviewed. In a nutshell, the ALJ had evidence before him that showed that Hearn received treatment for a self inflicted superficial cut to his right wrist on May 3, 2009, (R. 426-29, 451-53), for mood swings, depression and poor sleep on May 7, 2009, (R. 430), and for a drug overdose and depression on May 26, 2009, (R. 440-50).  In other words, rather than undermining the ALJ's findings, the "new" evidence from May and June 2009 shows Hearn's mood was euthymic, and that he was "really very jovial" on June 5, 2009.  In short, the "new" evidence does not render the ALJ's decision erroneous.

Hearn also submitted treatment notes from after his alleged onset date that show he contacted the C.E.D. Mental Health Center by phone on August 3, 2010, seeking treatment, (R. 491-93), and that he underwent an intake evaluation on September 27, 2010, (R. 495-500).  The notes also show that although Hearn was scheduled to return for individual therapy on October, 18, 2010, (R. 494), he failed to keep the appointment, (R. 501).  When the Center contacted Hearn by phone on October 27, 2010, Hearn's father stated that Hearn no longer wanted to receive treatment, and, as a result, he was discharged from treatment against professional advice.  (R. 502-03).  As is apparent, this evidence does not undermine the ALJ's decision, which was based in part on Hearn's sporadic mental health treatment history.  (R. 40).

Ultimately, based on this record, Hearn has failed to demonstrate that the evidence considered by the Appeals Council shows the ALJ erred in failing to credit

Hearn's testimony about his paranoia symptoms.  In fact, the evidence from 2010 supports the ALJ's finding that Hearn's sporadic treatment weakened his credibility. Accordingly, the court finds that substantial evidence supports the ALJ's decision even when the Appeals Council evidence is considered.

### H.    The Appeals Council's Denial of Review

Hearn's final contention of error is that the Appeals Council inadequately reviewed the new evidence.  Doc. 9 at 18.  Although the Appeals Council refused to consider much of the evidence Hearn submitted, *see supra* Part V.A., it accepted a portion of it and made it part of the record, (R. 6).  However, the Appeals Council explained that after considering the evidence, it "found that this information does not provide a basis for changing the Administrative Law Judge's decision."  (R. 1-2). According to Hearn, "[t]his review is purely conclusory, and it epitomizes 'perfunctory adherence' to the ALJ decision," which he contends requires this court to remand the case.  Doc. 9 at 20.

To support his contention, Hearn relies on *Epps v. Harris*, in which the court found that the Appeals Council's failure to adequately evaluate new evidence required a remand:

> Although the Appeals Council acknowledged that Epps had submitted new evidence, it did not adequately evaluate it.  Rather, it perfunctorily adhered to the decision of the hearing examiner.  This failure alone makes us unable to hold that the Secretary's findings are supported by substantial evidence and requires us to remand this case for a determination of Epps' disability eligibility reached on the total record.

624 F.2d 1267, 1273 (5th Cir. 1980) (citing *Mann v. Gardner*, 380 F.2d 182, 187 (5th Cir. 1967).[18]  Hearn's reliance on *Epps* is misplaced because, in *Epps,* the Appeals Council did not deny review; rather it granted review and then affirmed the decision of the ALJ.  *Id.* at 1269, 1272; *see also Edwards v. Colvin*, No. 2:11cv883-SRW, 2013 WL 6772975 (M.D. Ala. Dec. 20, 2013) (explaining why *Epps* involved the Appeals Council's granting of review and affirmance of the ALJ's decision, rather than a denial of review).  Significantly, the pertinent regulation in effect at the time required that when the Appeals Council grants review, its "decision shall be made in writing and contain findings of fact, and a statement of the reasons."  20 C.F.R. § 404.950(c) (1980).[19]  Therefore, in *Epps* the Appeals Council was compelled by the regulations to explain its reasons.

In contrast, here, the Appeals Council did not enter a decision affirming the ALJ.[20]  As a result, *Epps* writing requirement is not controlling.  Moreover, contrary to Hearn's contention, the Appeals Council's statement that it "considered the reasons [Hearn] disagree[d] with the decision and the additional evidence listed on the

---

[18]  Decisions of the former Fifth Circuit rendered prior to October 1, 1981, are binding precedent in the Eleventh Circuit.  *Bonner v. City of Prichard*, 661 F. 2d 1206, 1209 (11th Cir. 1981) (en banc).

[19]  The current regulation provides that if the Appeals Council reviews a case and issues a decision, "[a] copy of the Appeals Council's decision will be mailed to the parties at their last known address."  20 C.F.R. § 404.979 (2012).

[20]  The Appeals Council's denial of review is not a decision.  *See* 20 C.F.R. § 404.981 ("The Appeals Council may deny a party's request for review *or* it may decide to review a case and make a decision.") (emphasis added).

enclosed Order of Appeals Council," and that it "found that this information does not

provide a basis for changing the Administrative Law Judge's decision," (R. 1-2), is

sufficient to show that it actually considered the relevant evidence.  After all,

"nothing requires the [Appeals Council] to further explain its denial of review."

*Levie v. Comm'r of Soc. Sec.*,  514 F. App'x 829, 832 (11th Cir. 2013) (finding

identical language sufficient); *see also Mansfield v. Astrue*, 395 F. App'x 528, 530

(11th Cir. 2010) ("Because a reviewing court must evaluate the claimant's evidence

anew, the Appeals Council was not required to provide a more thorough explanation

than it did.").  Accordingly, the court finds no error in the Appeals Council's

consideration of the new evidence.

## VI.  Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that

Hearn is not disabled is supported by substantial evidence, and that the ALJ applied

proper legal standards in reaching this determination.  Therefore, the Commissioner's

final decision is **AFFIRMED**.  A separate order in accordance with the memorandum

of decision will be entered.

**DONE** this 26th day of September 2014.

_____

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE